And we'll hear first from Mr. Gomez. Good morning, your honors, counsel, and may it please the court. My name is Michael Gomez from the Office of the Federal Public Defender, and I am appearing on behalf of my client, Mr. Brian Lee. And I'd like to reserve two minutes for rebuttal. The LAPD officer's actions in this case were unjustified under the Fourth Amendment, under either of the two theories the government proposed. First, this was not a search incident to a lawful arrest because the officers did not have probable cause to arrest Mr. Lee for any offense. And second, this was not a valid tariff risk because the officers did not have reasonable suspicion that Mr. Lee was both armed and presently dangerous, both of which are needed to justify the severe physical intrusion of a frisk under the Fourth Amendment. So we ask that this court reverse the district court's ruling and order suppression of the evidence, or at the very least, remand for an evidentiary hearing in the sexual— Why isn't some—seeing somebody walking down the street drinking out of what appears to be a beer bottle, and then as you get closer you see the Pacifico label, why isn't that probable cause that they're drinking in public? Yes, your honor, that raises a good point. It creates reasonable suspicion, perhaps, that what is contained in the bottle meets the standard of Los Angeles Municipal Code 41.27c. So they have to exclude the possibility that he's poured out the beer and filled it with soda and— No, your honor, they have to confirm their suspicions. They have to meet what the Fourth Amendment requires. Beer bottle, and it's got Pacifico. It's not some obscure brand. It's one that's commonly read, and they see the bottle, and he was drinking out of it walking down the street. Yes, your honor, there is a Pacifico label on the bottle, but as is very common these days, a lot of beer manufacturers do make non-alcoholic beverages. So it could have been just as easy to lift the bottle, confirm that it actually was a beer bottle, that it contained— How? By taking a swig? What do you mean by confirming that it was a beer bottle, that it was actually beer in the bottle? Well, there are many ways. One could just be reading the label to tell whether there was more than one-half of 1% of alcohol per volume, and that would tell you right on the label, and that would confirm that, yes, there is probable cause that he was drinking an alcoholic beverage, which was prohibited under LAMC 41.27c. But they did see the Pacifico label. Right, your honor. Just because it had the Pacifico label, that was not enough for the officers to either confirm or dispel their suspicion. You mean any—no well-known beer label on a beer bottle is enough to raise a reasonable suspicion that he was drinking alcohol on the sidewalk? Yes, I do think you make a good point. It's enough to raise a reasonable suspicion of the violation of that offense, but not probable cause. For example, there's—I'm sorry. Heineken makes a non-alcoholic beverage, which bears the Heineken label, but you wouldn't know that unless you read the label. And the point here is that the officers did absolutely nothing to investigate. Their whole point in turning around and pursuing Mr. Lee was, as the officer said, to investigate further at ER 97. They didn't do that. Does it matter that he's never disputed that there was beer in the bottle? No, your honor. Why not? I'm sorry. Why not? Well, one, it has to be probable cause determined at the time based on the totality of the circumstances and facts known to the officers. But at the time, one of the officers said, put that beer bottle down. He didn't say, oh, this isn't beer. This is root beer or something else. Right, right. And I think it's also important to consider the factor that—the racial factor in this case and the context in which this stop occurred. You know, Mr. Lee is a black man who was approached in the middle of a Saturday afternoon. The police were not on investigating a crime. They weren't responding to a dispatch of criminal activity. They were on general patrol. He sees the police turn around and come toward him, and they immediately tell him to put down the beer bottle, and he does. So in hindsight, it might have been great to be able to challenge the police officer in that moment. But it's also important, as this court has done in United States v. Brown, which is consider the racial context of these police-civilian encounters to determine the reasonableness of an individual's actions. And here, Mr. Lee could have contested, no, this is not beer, or could have said something. But in evaluating that, he did exactly what the officer told him to do, which was put down the beer bottle, not create a tense moment that could lead to violence or further aggression, and he complied. He complied completely from the beginning to the end. He was calm, docile, and compliant. But the officers did absolutely nothing. Why don't you switch over to the Terry's stop portion of it. I wanted to ask you about this notion of blading, of, you know, positioning a body in a way that at least might appear to the police officers that he could be armed. What are your thoughts about that? Yes, Your Honor, the police officers did place heavy emphasis on their characterization of Mr. Lee's posture while walking away as blading. But to be clear, that's just a characterization. You know, we don't know how far he was turned. We don't know if he was hunched over. There were no facts to support this blatant characterization of Mr. Lee's posture. So we're left with what the police have termed blading, but adding a sinister or a label to, you know, someone's posture while walking is not enough to rise to the level of reasonable suspicion that someone is armed. There was no bulge. In United States v. Flatter, this court has put forth a couple of factors that the police sometimes consider in determining whether there is reasonable suspicion someone is armed, such as whether there's a bulge under the shirt, whether they see the individual reaching for something in their waistband, making sudden furtive movements, and there was none of that here. The officer simply saw Mr. Lee, who was well within his rights to turn away. When he hadn't even been ordered by police to stop, they didn't turn on their lights or anything. He just turned away from the police, which we are all well within our rights to do. But it's a fact. You're not saying it's a factor the police couldn't consider, are you? No, it's not at all. All right. So then if they consider it, I think their understanding is that, you know, a person, and you said they didn't see a bulge, but from their understanding, I understand that the purpose of blading for some people is to hide the bulge. You know, and so the police may have thought, well, that's why, you know, we didn't see the bulge. Yes, Your Honor, and I think you make a great point by saying the purpose for some people, and when the police use blading as a factor in determining reasonable suspicion, there has to be something else. It's blading plus. Here, there really wasn't blading plus anything else. It was blading and them leaping to the conclusion that he was concealing a firearm. He could have just as easily been concealing or trying to conceal the beer bottle that they said he illegally possessed or that he illegally drank out of on the sidewalk. But there was nothing here to support the officer's conclusion that he was blading to conceal a firearm. And there are no other factors that would support a reasonable suspicion that Mr. Lee was armed. Well, the government talks about the type of neighborhood that he was in and walking away quickly. Are those permissible factors for the police to consider? Yes, Your Honor, there are plenty of factors for the police to consider. But when we're talking about reasonable suspicion, they must be specific and articulable facts to support any inferences the officers may draw from them. And here, there are none. Yes, the officers did talk about some atmospheric factors, such as a high-crime neighborhood. They mentioned recent gang activity and recent shootings. But there was no data to support either of those two atmospheric factors. And more importantly, those factors were never tied to Mr. Lee himself. They didn't say that they saw him or knew him to be part of these gangs. They didn't see him engaged in any drug dealing. They didn't see him act in any aggressive or violent manner. This was just someone walking on a sidewalk on a Saturday afternoon who took a sip out of something that appeared to be a beer bottle. That was it. Do you want to save some time for rebuttal? Yes, Your Honor. We'll hear now from Mr. Friedman. Good morning, Your Honors. David Friedman of the United States. May it please the Court. I will also start with the search incident to arrest exception, because I believe the analysis is far more straightforward. The only question here is whether there was probable cause at the time of the search that the defendant was drinking in public. And in our view, this is not a difficult question. Probable cause is not a high standard. The officers here saw the defendant drinking from a bottle that had a Pacifico label. The officer knew that was a beer brand, and that provided a fair probability the defendant was drinking in public. He's offered several alternative sort of innocent explanations, the possibility that he had poured the beer out and put coffee or kombucha in it. Beyond that being far-fetched, there's no reason the officers do not have to rule out any sort of theories of innocence before finding this probable cause. What about Mr. Gomez's point that it could be a non-alcoholic beer bottle, and at the very least you could have read the label to see whether it contains information about alcohol content? I mean, that wouldn't have been too hard for the officers to do. It wouldn't have been too hard, but I don't think it was required. The officer did read the label. He didn't just see it was a dark glass bottle. He saw it was a Pacifico beer bottle, which he knew was a type of beer. And this argument about it possibly being a 0% type of beer, a non-alcoholic beer, I believe that's being raised for the first time today, and there's nothing in the record that suggests Pacifico even sells that type of beer. And even if they did, I think holding that bottle would still provide a fair probability that Defendant was drinking in public, particularly given the fact that, as you noted, when Officer Peralta arrived, he said, put that beer down. He said it three times, and Defendant didn't say, you know, this isn't a beer. He put the bottle down. So those two facts together provide a fair probability, even if there wasn't complete certainty that Defendant was drinking in public. In our view, that's enough for this court to affirm. The Defendant doesn't challenge any other part of the analysis, and there's no reason for this court to reach any of the other issues. If the court has other questions, though, about the case. Well, I do have questions about, I mean, because you have defended the alternative rationale that this was a Terry stop. Why doesn't the fact that they immediately slapped cuffs on him make it an arrest and not a Terry stop? I mean, a reasonable innocent person in that situation would think this is an arrest, right? So the reason it was okay to use handcuffs in situations they thought he was armed. So the analysis, I think, sort of dovetails a bit. This court has held in both Washington v. Lambert and When you say they thought he was armed, what gave rise to that thought? In particular, the fact that he bladed his body as he walked away. That's the most important factor. As Officer Peralta had seen, suspects use that technique to hide a gun in the past. It's an unnatural way of walking, and the Defendant doesn't challenge that he was blading his body as he walked away and that that is a way to hide things. There were other factors in this case. We're not arguing on just based on blading alone. I agree it has to be blading plus. We think his reaction to the police was relevant. He was standing at the corner when the police first drove by. He then walked quickly away towards his house. He actually almost got there. And the fact that this was a neighborhood that wasn't just in a high-crime neighborhood but a neighborhood that had experienced recent gang shootings near that particular block. So the officers had a reasonable suspicion or some level of suspicion. But that would mean that anyone that an officer perceives in that neighborhood to be walking strangely in some sort of way or angled against them can be stopped and handcuffed. It's a little bit of a broad argument, don't you think? Well, I think it was somewhat limited because the officers weren't saying the entire 77th Street division. They were saying this particular corner because it was near a gang stronghold. They were saying it not all the time but this particular time because there had been recent shootings. And this particular Defendant because he was walking in a strange way. I don't think you're going to see a lot of people who are walking shielding their body down the street. It is an unnatural way to walk. But under Terry, you need reasonable suspicion for the stop and you separately need reasonable suspicion for the frisk. But you seem to be suggesting that if they have reasonable suspicion that he's armed, which means they have reasonable suspicion to do the frisk, the cuffs can go on right away. So basically in every Terry stop where there's going to be a frisk, you can slap cuffs on. Have we ever held that? I believe this Court has held that. In both Washington v. Lambert and United States v. Edwards, which are cases that both parties cite, this Court held that if the officers have, and the way they phrased it was actually just information that the Defendant is armed, they can use intrusive measures. And it actually goes even beyond handcuffs. Those cases suggest the officers can pull their guns. They can put the Defendant in the back of a patrol car. They can order him to lie on the ground. And this goes back to the reason for the Terry frisk, page 23 of Terry. But that really is predicated on specific information, specific reasons, at least in Washington. There has to be specific discernible information that a person might be armed. I don't know that just because someone is angling their body in a way that the police might find suspicious is going to be enough to have these intrusive measures as a matter of course. So I agree just the blading alone, and the Defendant brings up the possibility he could have been hiding something else. I think that's a reasonable inference. But there were other factors here. The fact that he wasn't just standing there like in Brown walking down the street. He saw the police. He immediately turned around and walked away. And the neighborhood, in particular the recent shootings, is relevant here. The fact that there had been recent shootings near that block, and the officers were actually conducting extra patrols to look for firearms. I think putting all those together, considering that reasonable suspicion is not a high standard, it was enough in this case. It's just what Terry recognized. It doesn't require certainty. It's just reasonable suspicion, and that's because we don't want officers to have to go about their business with the risk the Defendant is going to pull a gun. And the inference was ultimately correct here. So for that reason, we also believe this Court can affirm on the basis that it was a lawful Terry Frist. But again, the Court doesn't need to reach any of these issues. It can affirm on the basis that this was a search incident to arrest because there was probable cause. The Defendant was drinking in public, and that's sufficient to justify the entire interaction. Did I understand correctly from the record that the police are training their officers, almost as a matter of course, to slap handcuffs on people? I believe the officers said it's generally more dangerous. I don't think it's something they do as a matter of course. I agree that in their declarations the training says it's safer for both sides if the Defendant is in handcuffs during the interaction. But I don't believe they provide any more detail beyond that on the particular training. I would say our office certainly recognizes that a Frist does not fall as a matter of course, nor does using handcuffs. There needs to be some justification, and we believe there was, again, because there was information the Defendant was armed. Are there any other questions? I'm happy to answer them, but otherwise.  Thank you, Counsel. Thank you. Thank you, Your Honors. All right. We'll hear rebuttal from Mr. Gomez. A few quick points about some issues that have continued to come up. As for the probable cause, we're not asking officers to prove a negative or to prove innocent explanations. We're asking officers to do what the Fourth Amendment requires, which is get enough information to satisfy the probable cause standard and to rebut the government's claim today. We did raise the fact that the beer bottle could have contained a non-alcoholic beverage, and we did put that in the opening brief at page 19 and the reply brief at page 6 as one of the many things that could have been in the bottle. Second, yes, Your Honors do bring up a good point that it seems to be a routine method of just allowing officers to just handcuff civilians while going about their business, and that's not what the Fourth Amendment requires. It may be what the LAPD teaches their officers, but the Fourth Amendment standard requires much more than that. And there have been a lot of questions about blading. I understand that Your Honors are concerned about that. And if Your Honors believe the more appropriate remedy is to remand for a limited evidentiary hearing so that the officers can explain exactly what position Mr. Lee's body was in to determine whether it was so suspicious that it would have risen to the level of reasonable suspicion that he was armed as opposed to just walking a certain way that, you know, they didn't know his normal gait, so it could have just been his way of walking. So Your Honors, we ask that this court reverse the district court's ruling and order suppression, but if not, order a limited remand for an evidentiary hearing and factual findings. Thank you. Thank you, counsel. The case just argued is submitted.
judges: TASHIMA, COLLINS, SANCHEZ